CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 7, 2014

LETTER TO COUNSEL:

    RE:    *Valerie Lynn Lowery v. Commissioner, Social Security Administration*;
              Civil No. SAG-13-1181

Dear Counsel:

    On April 22, 2013, the Plaintiff, Valerie Lynn Lowery, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income ("SSDI") and Disability Insurance Benefits ("DIB").[1] (ECF No. 1). I have considered the Commissioner's motion for summary judgment (ECF No. 15). Ms. Lowery, who appears *pro se*, has not filed a motion for summary judgment or an opposition to the Commissioner's motion. I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion. This letter explains my rationale.

    Ms. Lowery filed her initial claims in July, 2010, alleging disability beginning on May 1, 2010. (Tr. 202-10). Her claims were denied initially and on reconsideration. (Tr. 128-33, 135-40). A hearing was held on November 8, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 23-65). Following the hearing, on January 17, 2013, the ALJ determined that Ms. Lowery was not disabled during the relevant time frame. (Tr. 7-22). The Appeals Council denied Ms. Lowery's request for review, (Tr. 1-4), making the ALJ's decision the final, reviewable decision of the agency.

    The ALJ found that Ms. Lowery suffered from the severe impairments of degenerative disc disease, diabetes, and depression. (Tr. 12). Despite these impairments, the ALJ determined that Ms. Lowery retained the residual functional capacity ("RFC") to perform:

---

[1] Although Ms. Lowery filed claims for both SSDI and DIB, her Complaint in this Court only references an appeal of the SSDI claim. [ECF No. 1]. Since the standard for both types of benefits is the same, the omission is immaterial to my consideration of her appeal.

>light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she is limited to simple, routine, unskilled jobs with low stress, low concentration and low memory; she is limited to jobs that are 1-2 step tasks with no production rate pace work, no decision making, changes in the work setting or judgment to perform the work; she is limited to jobs that deal with things rather than people and should have only occasional interaction with others; she can stand for 30 minutes and sit for 30 minutes without the use of her cane, which is needed mostly for ambulation for extended periods, on an alternate basis or at will, 8 hours a day, 5 days a week; she should avoid heights and hazardous machinery, temperature and humidity extremes; she should avoid prolonged climbing, balancing or stooping, and she is limited to jobs with no overhead reaching or repetitive neck turning.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Lowery could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 21-22).

Ms. Lowery, who appears *pro se*, has not filed a motion in support of her appeal. I have carefully reviewed the ALJ's opinion and the entire record. For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ's sequential evaluation appears to address, at step two, each of the impairments Ms. Lowery suffered during the relevant time frame, including both mental health and physical impairments. (Tr. 12-14). The ALJ cited to the medical exhibits supporting his evaluation of Ms. Lowery's severe impairments. *Id.* The ALJ also evaluated several other medical issues, which he found to be non-severe. *Id.* Despite finding Ms. Lowery's complaints of knee pain and shoulder pain to be non-severe, the ALJ appropriately accommodated the complaints by including limitations in the RFC assessment. (Tr. 13-14). Moreover, the ALJ expressly considered Ms. Lowery's obesity, but determined it to be non-severe because it alone did not cause more than a slight limitation in her ability to function. (Tr. 14). After finding at least one severe impairment, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Ms. Lowery's ability to work. *See* 20 C.F.R. § 404.1523. Accordingly, I find no basis for remand.

At step three, the ALJ determined that Ms. Lowery's impairments did not meet the specific requirements of, or medically equal the criteria of, any listings. (Tr. 14-16). The ALJ expressly evaluated listing 1.04 (disorders of the spine). (Tr. 14). With respect to mental health impairments, the ALJ expressly considered listings 12.04, 12.05, and 12.08. *Id.* With respect to the mental health listings, the ALJ applied the required special technique to evaluate Ms. Lowery's functional abilities in the four specified areas. (Tr. 14-16). The ALJ cited to both medical records and other record evidence to support his conclusions that Ms. Lowery had only moderate restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence, or pace. *Id.* In fact, the ALJ found greater

limitations than those found by a state agency psychological consultant, evidencing a careful consideration of the evidence of record as opposed to a mere "rubber stamp" of the physician's conclusions. (Tr. 15). Also, the ALJ considered the valid IQ scores of record in analyzing the requirements of listing 12.05. (Tr. 16). I concur with the ALJ's assessment.

At step four, the ALJ provided a detailed summary of Ms. Lowery's testimony and the information she provided about her activities of daily living. (Tr. 17-18). The ALJ also provided support for his adverse credibility assessment, citing the discrepancy between the complaints of pain and the relatively minimal treatment sought, the conservative treatment recommended by her doctors, her non-compliance with the recommended diet and medication regimen for diabetes, and evidence of both treatment gaps and medication non-compliance with respect to mental health issues. (Tr. 17-19). The ALJ also included a detailed summary of the medical evidence of record from the alleged onset date through the date of the opinion. (Tr. 432-38). For example, the ALJ noted physical examination records showing "normal gait and station with some tenderness and limited range of motion," (Tr. 18); evidence of physical activity including furniture moving and stair climbing, i*d.;* admitted dietary non-compliance, (Tr. 19); and evidence of fluctuation in mental health status, with some connection to medication non-compliance, (Tr. 19).

The ALJ also provided detailed support for his assignments of weight to the opinion evidence of record. For the state agency medical consultants, both physical and mental, the ALJ reviewed the conclusions of all the consultants, but determined that additional restrictions that were not recommended by the consultants were required. (Tr. 19-20). Specifically, the ALJ found support for a sit/stand option, limitations on reaching and neck turning, and limitations pertaining to social interaction. *Id.* With respect to Ms. Lowery's treating psychiatrist, Dr. E.L. Bautista, the ALJ assigned his opinion "some weight" and imposed RFC restrictions to account for the areas of limitation that Dr. Bautista had found. In particular, Dr. Bautista had found poor to no ability to deal with work stresses and maintain attention and concentration. (Tr. 465). The ALJ addressed those issues in the RFC assessment by including limitations to "simple, routine, unskilled jobs with low stress, low concentration, and low memory," and "1-2 step tasks with no production rate pace work." (Tr. 16). Dr. Bautista also opined that Ms. Lowery had poor to no ability to perform complex or detailed job instructions, which the ALJ addressed via the limitation to simple work. (Tr. 16, 466). Dr. Bautista's suggestion that Ms. Lowery had poor to no ability to behave in an emotionally stable manner was addressed via the limitation that Ms. Lowery "deal with things rather than people and should have only occasional interaction with others." *Id.* Otherwise, Dr. Bautista found that Ms. Lowery had abilities ranging from "fair" to "unlimited" in other areas, meaning that the ALJ's RFC assessment corresponded with the opinion of Ms. Lowery's treating physician. My review of the ALJ's decision is limited to whether substantial evidence supports the decision and whether correct legal standards were applied. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589 (4th Cir. 1996)). I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In light of the substantial evidence of record supporting the ALJ's RFC assessment, I find no error.

The ALJ also appropriately completed step five of the sequential evaluation. The ALJ heard testimony from the VE regarding the ability of a person with Ms. Lowery's RFC to perform work. (Tr. 57-62). The VE responded by identifying six different positions at both the sedentary and light levels of exertion. (Tr. 59-60). The VE testified that the information provided was consistent with the Dictionary of Occupational Titles ("DOT"), with the exception of the sit/stand option, which is not contained in the DOT. (Tr. 60-61). The VE premised her testimony regarding the sit/stand option on her experience as a vocational expert. *Id.* The ALJ credited the VE's testimony. (Tr. 21-22).

The only apparent issue with the ALJ's step five analysis is a discrepancy between the hypothetical posed to the VE and the RFC assessment determined by the ALJ. In the hypothetical, the ALJ stated in relevant part that he intended "jobs that are more of a two-step task, doing production-rate-pace work." (Tr. 58). In the RFC assessment, the ALJ limited Ms. Lowery to "jobs that are 1-2 step tasks with no production rate pace work." (Tr. 16). Given the large number of "INAUDIBLE" portions of the transcript, it is entirely possible that the apparent discrepancy is only a transcription error. However, even if the ALJ presented the hypothetical question improperly, any error is harmless. The DOT indicates that, of the six jobs identified by the VE, three can be done either at production rate pace or not at production rate pace. *See* Bander, Hand, DOT § 920.687-026; Continuous-Towel Roller, DOT § 361.685-014; Final Inspector, DOT § 727.687-054. The other three jobs are not performed at production rate pace. *See* Type-Copy Examiner, DOT § 979.687-026; Bench Hand, DOT § 715.684-026; Table Worker, DOT § 739.687-182. Because at least three of the jobs identified by the VE do not involve production rate pace work, even if Ms. Lowery were unable to perform at production rate pace, she would still be able to perform work existing in significant numbers in the national economy. The three jobs without any production rate pace work each had regional numbers exceeding one thousand. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number). The ALJ's step five determination, therefore, was supported by substantial evidence.

For the reasons set forth herein, the Commissioner's motion for summary judgment (ECF No. 15) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge